AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| INFORMATION ASSOCIATED WITH THE CELLULAR | ) | Case No.  4:21 MJ 6196 PLC |
| DEVICE ASSIGNED CALL NUMBER (314) 229-7441, THAT | ) | |
| IS STORED AT PREMISES CONTROLLED BY T-MOBILE, | ) | SIGNED AND SUBMITTED TO THE COURT FOR |
| | ) | FILING BY RELIABLE ELECTRONIC MEANS |

## APPLICATION FOR A SEARCH WARRANT

I, _Kassandra L. McKenzie, FBI_, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the _____ District of _____NEW JERSEY_____ , there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 924(b); | Interstate transport of a firearm with the intent to use the firearm for a felony offense |
| 18 U.S.C. § 2261(A) | Interstate Stalking |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the following is true and correct.

_____
*Applicant's signature*

Kassandra L. McKenzie
Special Agent, FBI
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: _____November 8, 2021_____

*Patricia L. Cohen*
*Judge's signature*

City and state: _____St. Louis, MO_____

Honorable Patricia L. Cohen, U.S. Magistrate Judge
*Printed name and title*

AUSA:  C. Ryan Finlen, #6305918(IL)

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number 314-229-7441 (the "SUBJECT ACCOUNT"), that are stored at premises controlled by T-Mobile (the "Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period September 27, 2021, to November 5, 2021:

a.   The following information about the customers or subscribers of the Account:

  i.   Names (including subscriber names, user names, and screen names);

  ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii.   Local and long distance telephone connection records;

  iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v.   Length of service (including start date) and types of service utilized;

  vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International

1

Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and,

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received; and,

iii. Timing advanced data, per call measurement data, or any other similar data that reflects a precise location of the cellular device.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 18, United States Code, Section 924(b) (interstate transport of a firearm with the intent to use the firearm in a felony), during the period of September 27, 2021, and November 5, 2021.

2

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

<table>
<tr><td>IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (314) 229-7441, THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE.</td><td>Case No. 4:21 MJ #6196 PLC<br><br>**FILED UNDER SEAL**<br><br>SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS</td></tr>
</table>

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Kassandra L. McKenzie, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(314) 229-7441** ("the SUBJECT PHONE"), that is stored at premises controlled by **T-Mobile** (hereinafter the "Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 0705. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the FBI and have been so employed since July 2015. I am assigned to the violent crime squad, which is a part of the Safe Streets Violent Crime Task Force (hereinafter "SSVCTF"), which is a multi-agency Federal, State, and Local task force, of the Saint

1

Louis Division of the FBI. As such, I investigate violent crimes such as carjackings, robberies, firearms violations, serial killings, extortions, and murders for hire. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other members of the investigative team and witnesses. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. In my role as a Special Agent with the FBI, I have utilized investigation techniques involving the tracking of suspects engaged in criminal activity through investigation of their internet activity, cellular phone activity, and social media activity. I have received at least annual training on the tools used by suspects engaged in criminal activity to document and further that criminal activity. Furthermore, I have applied for, received, and executed search warrant for historical cellular location data in furtherance of criminal investigations. I have also assisted fellow law enforcement agents in doing the same as part of my regular activities as a Special Agent with the FBI.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 18, United States Code, Section 924(b) (interstate transport of a firearm with the intent to use the firearm for a felony offense) and Title 18, United States Code, Section 2261A (Interstate Stalking) will be found in the location set forth in Attachment A. There

2

is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO WIRELESS PROVIDERS

7. In my training and experience, I have learned that the Provider is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

8. Based on my training and experience, I know that wireless providers can collect cell-site data about the Subject phone. I also know that wireless providers such as typically collect and

retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

9. Based on my training and experience, I know that wireless providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Subject phone's user or users and may assist in the identification of co-conspirators and/or victims.

10. Because the cellular device generally attempts to communicate with the closest unobstructed tower, by reviewing the above-described information, your affiant and other law enforcement officers can determine the approximate geographic area from which the communication originated or was received.

11. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic

4

Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

12. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service used, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

## PROBABLE CAUSE

### St. Louis, Missouri .40 Caliber Shootings

13. Based upon a series of linked shootings, the FBI, St. Louis County Police Department ("SLCPD"), and the St. Louis Metropolitan Police Department ("SMLPD") jointly investigated the matter. Based upon that joint investigation, I have reviewed police reports regarding each

incident as well as attended briefings with investigators documenting their findings and observations. Based on my involvement with this investigation, I determined the following:

14. On September 12, 2021, at approximately 21:04 hours, victim L. M. was shot at a bus stop located at 1624 Chambers Road, Saint Louis County, Missouri. Investigators informed me that their interviews of witnesses and review of surveillance video revealed that while the victim was waiting for a bus, a subject approached him from behind and shot him several times without any warning. Investigators further informed me that, at the scene, investigators located several .40 S&W caliber cartridge casings.

15.  On September 13, 2021, at approximately 21:34 hours, Victim M. H. was murdered in the 9900 block of Glen Owen Drive, Saint Louis County, Missouri 63136. Saint Louis County Police Department ("SLCPD") officers informed me that they had responded to a ShotSpotter call at this location for two gunshots heard when they located Victim M. H., who suffered from gunshot wounds to her arm and head. SLCPD officers further informed me that two "Sig" stamped, .40 S&W caliber, cartridge cases were recovered from the scene.

16.  On September 16, 2021, at approximately 22:23 hours, Victim R.H. was shot in the rear of 4542 Adelaide Avenue, Saint Louis, Missouri 63115. St. Louis Metropolitan Police Department ("SLMPD") officers informed me that they had responded to a shooting at the BP gas station 4126 West Florissant Avenue where they located Victim R.H. who suffered from a gunshot wound to the face. Victim R.H. was conscious and breathing but unable to provide a statement. Victim R.H. was transported to the hospital where she was admitted to the Intensive Care Unit. SLMPD officers informed me that they followed a blood trail that led to the rear of 4542 Adelaide Avenue. SLMPD Homicide Detective Scott Peniston, DSN 8863, later located one "Sig" stamped, .40 S&W caliber, cartridge case at the scene.

6

17. Also on September 16, 2021, at approximately 23:45 hours, Victim P. A. was murdered in the 3800 block of West Florissant Avenue, Saint Louis, Missouri 63107. Based on my familiarity with the St. Louis area and this investigation, I know that this location is approximately one-half mile from 4542 Adelaide Avenue. SLMPD officers had responded to a "Call for Police-Calling for Help" at this location when they located Victim P. A. who suffered from a gunshot wound to the head. SLMPD officers further informed me that one "Sig" stamped, .40 S&W caliber, cartridge case was seized from scene.

18.  On September 19, 2021, at approximately 12:10 hours, SLMPD officers responded to a "Supposed Sudden Death" in the 1500 block of Mullanphy Street, Saint Louis, Missouri 63106. Based on reports I reviewed and working with detectives involved, I learned that, upon arrival, officers located Victim C. R. deceased and lying in a vacant lot within the stated block. Victim C. R. sustained gunshot wounds to the head and body. Based upon the scene investigation, investigators informed me that it appeared Victim C. R. had been deceased for an extended period due to the fact apparent blood appeared dry. Investigators informed me that one "Sig" stamped, .40 S&W caliber, cartridge case was seized from the scene. My review of other reports informed me that on September 18, 2021, at approximately 23:52 hours, SLMPD officers received a ShotSpotter call to this area for two gunshots heard; however, the victim was not located at that time. No other ShotSpotter call was discovered at this location leading investigators to believe the incident occurred on September 18 at approximately 23:52 hours.

19.  On September 26, 2021, at approximately 07:15 hours, Ferguson Police Officers informed me that they responded to a Shotspotter call at, or near, 1710 Barbados Lane, Saint Louis County, Missouri 63136. Upon arrival, they located victim L.R. deceased from gunshot wounds

to the head and hand. Based on their reports, I learned that investigators recovered two .40 caliber cartridge cases at the scene.

20.  I have reviewed laboratory reports from the SLMPD Laboratory which reflected that analysis later determined all cartridge cases noted herein were fired from the same firearm.

**Murder of Victim D.I. in Kansas**

21. On or about November 1, 2021, the Kansas City, Kansas Police Department discovered the body of Victim D.I. in his apartment located in the 900 block of Washington Boulevard in Kansas City, Kansas. Investigators from the Kansas City, Kansas Police Department informed me that they determined that Victim D.I. died as a result of gunshot wounds.

22.  Based on my discussions with other investigators, I learned that on October 28, 2021, REED traveled from St. Louis City, Missouri, within the Eastern District of Missouri to Kansas City, Missouri via Amtrak train. I was informed that documentation provided from Amtrak regarding REED's travel indicated that the train matching REED's Amtrak itinerary arrived at Union Station located at 30 West Pershing Road, Kansas City, Missouri at approximately 21:40 hours on October 28, 2021.

23. Based on surveillance video provided to investigators and described to me, at approximately 23:11 hours (which is approximately 1.5 hours after REED's train arrived at Union Station), surveillance video from the apartment building located in the 900 block of Washington Boulevard, in Kansas City, Kansas, depicted Victim D.I. hold the door open for REED as Victim D.I. and REED entered the apartment building.

24.  At approximately 23:15 hours, Victim D.I. and REED are captured on surveillance video entering Victim D.I.'s apartment together. Based on summaries of interviews provided to

me, Victim D.I.'s family were not able to contact Victim D.I. at any time after October 28, despite attempts to do so in the days after October 28.

25.   Based on surveillance video provided to investigators and described to me, on October 29, 2021, at approximately 06:05 hours, video surveillance from the apartment building located in the 900 block of Washington Boulevard, in Kansas City, Kansas, depicted REED exiting Victim D.I.'s apartment alone. Victim D.I. is not seen leaving his apartment between he last entered on October 28 and when police find him deceased on November 1.

26.   Based on my understanding of the Kansas City area, including the location of Amtrak's Union Station and the apartment building located in the 900 block of Washington Boulevard, I know that using the fastest route between Union Station in Missouri and the apartment building located in the 900 block of Washington Boulevard, in Kansas City, Kansas, the border between Missouri and Kansas is approximately 3.6 miles away from Union Station. The apartment building located at the 900 block of Washington Boulevard, in Kansas City, Kansas, is another 1.8 miles along the fastest route.

27.   Based on my training and experience, I believe that REED would NOT have been able to acquire a firearm in the 1.5 hours between the time he arrived at Union Station and the time he arrived in the 900 block of Washington Boulevard, especially given the late hour and the short distance (approximately 1.8 miles) between the Missouri border and the apartment in Kansas. Consequently, there is probable cause to believe that REED transported the firearm used to kill Victim D.I. from St. Louis, Missouri, to Kansas.

**Murder of Victim R.F. in Kansas**

28.   On or about November 2, 2021, the Kansas City, Kansas Police Department informed me that they were notified that the nude body of Victim R.F. was discovered inside her apartment,

9

located within another apartment within the same apartment building located within the 900 block of Washington Boulevard in Kansas City, Kansas. Investigators determined that Victim R.F. died from gunshot wounds to her head and upper back. At the time of discovery, investigators informed me that Victim R.F.'s cellular telephone and wallet were missing from the apartment.

29.  Security staff at Victim R.F.'s apartment building documented that on October 29, 2021, Victim R.F. entered the building with a male subject who presented the Missouri drivers' license of Perez REED. I reviewed a still image taken from surveillance video footage that captured the subject was a black male with a crescent tattoo on his forehead.

30.  I reviewed booking records from prior arrests of REED and determined that he had a crescent moon tattoo on his forehead.

31. On October 29, 2021, at approximately 18:58 hours, surveillance video from the apartment building located in the 900 block of Washington Boulevard captured REED entering Victim R.F.'s apartment building. Thereafter, at approximately 19:16 hours, video surveillance captured REED leaving the Victim R.F.'s apartment. Investigators reviewing the surveillance video further informed me that Victim R.F. was not captured on surveillance video leaving her apartment at any subsequent time.

32.  I reviewed reservation records of Amtrak and observed that during the booking process, REED listed his phone number as 314-229-7441, the **Subject Account**.

33. I reviewed call detail records for the **Subject Account** and determined that it communicated with Victim R.F.'s known phone number approximately 652 times between October 5, 2021, and October 29, 2021. Records showed that approximately 42% of the communications were outgoing from REED's phone, whereas the remainder were incoming

communications from Victim R.F.'s phone. REED's phone stopped calling Victim R.F.'s phone after October 29, 2021.

34. Investigators were unable to locate any witness who saw Victim R.F. alive after October 29, 2021. Likewise, Victim R.F. was not seen on any surveillance video recordings after she entered her apartment with the subject.

**November 5, 2021 Possession of a .40 Caliber Firearm**

35. On or about November 5, 2021, REED purchased an Amtrak ticket to return from Kansas City, Missouri to St. Louis, Missouri. The Amtrak train left Union Station at approximately 16:00 hours (the scheduled time) and was due to arrive at the St. Louis Gateway Station at approximately 21:40 hours. Law enforcement agents conducted surveillance while aboard the Amtrak train and kept me apprised of their observations throughout the night. Law enforcement agents observed REED board the train. Rather than remain on the train to St. Louis, REED exited at the first intermittent stop in Independence, Missouri. After exiting the train eight stops before the destination on REED's purchased itinerary, law enforcement observed that REED left the train station and boarded a bus.

36. Law enforcement agents decided to stop REED based on the facts above. When they detained REED, agents discovered that REED had a loaded .40 caliber Smith & Wesson semi-automatic firearm on his person. I have reviewed records from the SLMPD Laboratory which reflected that forensic analysis concluded that the firearm was used in each of the six St. Louis shootings outlined above.

37. On November 5, 2021, law enforcement agents advised REED of his *Miranda* rights and REED agreed to answer questions. During his interview, I observed that REED stated the following:

a. REED found the .40 caliber Smith & Wesson semi-automatic handgun he had on his person in Jennings, Missouri (which is within the Eastern District of Missouri) and took the firearm to Kansas City, Kansas.

b. REED confirmed that the **Subject Account** was the number assigned to his phone at the time of his arrest.

c. REED admitted that he provided his identification to the security guard at the apartment building in Kansas City, Kansas.

d. REED admitted to knowing Victim R.F. but stated that his relationship with Victim R.F. was limited to purchasing drugs from her.

However, REED denied hurting anybody before the interview was terminated.

38.   In light of the facts and circumstances above, **Perez REED** was charged via Complaint in 4:21-MJ-7289-SPM with a violation of Title 18, United States Code, Section 924(b). This Court found there was probable cause to believe that on or about October 28, 2021, REED transported a .40 caliber Smith & Wesson firearm and .40 caliber ammunition from St. Louis, Missouri in interstate commerce to Kansas City, Kansas with the intent to commit a felony there with and with knowledge and reasonable cause to believe that a felony would be committed with said firearm and ammunition.

39.  Further, Title 18, United States Code, Section 2261A criminalizes traveling in interstate commerce with the intent to kill, injure, harass, intimidate, etc., and placing another person in reasonable fear of death or serious bodily injury. Based on the conduct described above, there is probable cause to believe that evidence of violations of Title 18, United States Code, Section 2261A will be found within the property described as Attachment A.

## AUTHORIZATION REQUEST

40. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

41. Due to the fact that T-Mobile produced call detail records for the Subject Account that reflected that account usage began on September 27, 2021, and remained active at the time of REED's arrest, there is probable cause that the requested records still exist and remain in the possession of T-Mobile.

42. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

I state under the penalty of perjury that the foregoing is true and correct.


Respectfully submitted,


11/08/2021
DATE

Kassandra L. McKenzie
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me by reliable electronic means, in accordance with Federal Rule of Criminal Procedure 4.1, on November 8, 2021.


*Patricia L. Cohen*
HONORABLE PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

13

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number 314-229-7441 (the "SUBJECT ACCOUNT"), that are stored at premises controlled by T-Mobile (the "Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

**ATTACHMENT B**

**Particular Things to be Seized**

I.    **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period September 27, 2021, to November 5, 2021:

a.  The following information about the customers or subscribers of the Account:

i.  Names (including subscriber names, user names, and screen names);

ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii.  Local and long distance telephone connection records;

iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v.  Length of service (including start date) and types of service utilized;

vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International

2

Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and,

    viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

    i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

    ii.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received; and,

    iii.  Timing advanced data, per call measurement data, or any other similar data that reflects a precise location of the cellular device.

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 18, United States Code, Section 924(b) (interstate transport of a firearm with the intent to use the firearm in a felony), during the period of September 27, 2021, and November 5, 2021.

3

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by T-Mobile, and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of T-Mobile.  The attached records consist of _____ **pages/CDs/megabytes**.  I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of T-Mobile, and they were made by T-Mobile as a regular practice; and

b.     such records were generated by T-Mobile electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of T-Mobile in a manner to ensure that they are true duplicates of the original records; and

2.     the process or system is regularly verified by T-Mobile, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                      Signature